**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

United States of America,

        Plaintiff,

      v.

Theron Preston Washington,

        Defendant.

**MEMORANDUM OPINION
AND ORDER**
Criminal No. 10-162 ADM/SRN

---

Leshia M. Lee-Dixon, Esq., Assistant United States Attorney, Minneapolis, MN, on behalf of Plaintiff.

Katherian D. Roe, Esq., Office of the Federal Defender, Minneapolis, MN; and Ryan P. Garry, Esq., Ryan Garry, Attorney, LLC, Minneapolis, MN, on behalf of Defendant.

---

## I. INTRODUCTION

This matter is before the undersigned United States District Judge for consideration of Defendant Theron Preston Washington's ("Washington") Objections [Docket No. 46] to Magistrate Judge Susan Richard Nelson's Report and Recommendation ("R&R") [Docket No. 34]. The R&R recommends (1) denying Washington's Motion to Suppress Evidence Obtained as a Result of Search and Seizure [Docket No. 14], (2) granting in part[1] and denying in part Washington's Motion to Suppress Eyewitness Identifications [Docket No. 15], (3) denying Washington's Motion to Suppress Identification, Statements, Admissions and Answers [Docket No. 16]. For the reasons set forth below, the Objections are overruled and the R&R is adopted.

---

[1] The R&R recommends granting Washington's Motion to Suppress Eyewitness Identifications with respect to the identification made by Ali Hashi Macalin. Neither party has objected to that portion of the R&R. Accordingly, the Court will adopt that portion of the R&R without further discussion.

## II. BACKGROUND

On the morning of June 8, 2010, a man approached the teller at the Northeast State Bank in Coon Rapids, Minnesota and handed her a demand note stating: "Count out $3,000 and you won't get hurt." Compl. [Docket No. 1], Perzichilli Aff. ¶ 4. The teller, Tiffani Schoolmeesters ("Schoolmeesters"), gave the man the money and he fled. Id. Bank vice president Scott Hudson ("Hudson") saw the man leaving in a maroon "Airport Taxi" minivan. See Tr. of Mot. Hr'g [Docket Nos. 22, 27] at 121. Hudson shouted the license plate number while another employee wrote it down. Id. The other employee then called police dispatch to report the robbery and provide the license plate number. Id.

Shortly afterward, police arrived at the bank and interviewed Schoolmeesters, Hudson, and another teller, Rose Hutchins ("Hutchins"). Id. Hutchins provided a description of the robber as (1) an African American male, (2) very dark complexion, (3) 5'2" or 5'3" tall, (4) wearing a white t-shirt, (4) with short hair, and (5) "not heavy." Id. at 45-46. Police then showed Schoolmeesters and Hudson the surveillance footage of the robbery. Id. at 119. After observing the surveillance video, police provided dispatch with an updated description of the robber as (1) an African American male, (2) "shorter," (3) "stockier," (4) with a shaved head, (5) facial hair coming to a point in the front, (6) wearing black sunglasses, (7) wearing a white t-shirt, and (8) wearing a distinctive gold ring on his left ring finger. Id. at 119-20.

Police then located and stopped the maroon "Airport Taxi" minivan. Id. at 94. The driver, Ali Hashi Macalin ("Macalin"), did not speak English well and had difficulty communicating with officers. Id. at 105. Because Macalin was initially noncompliant with officers, he was forcibly removed from the minivan. Id. at 103-05. Macalin did, however, then

accompany police to the Northtown Mall and indicate that he left his passenger at door five. Id. at 96. Other officers viewed video footage of door five at the mall's security office and updated the description of the robber to add that he was now wearing a blue or black jacket and carrying a backpack. Id.

Lieutenant Daniel Szykulski ("Szykulski") was on duty that morning and heard a report of a bank robbery with a description of the suspect as a "shorter stature black male, with a black-type hoodie." Id. at 6. Szykulski approached a Taco Bell located near Northtown Mall and saw a shorter African American male wearing a black sweater with a hood, known as a "hoodie." Id. at 8. Szykulski drove closer and noticed the man was carrying a light blue satchel. Id. at 8. Szykulski then called dispatch and was told that the suspect was carrying a light blue satchel. Id. Szykulski waited for an additional officer to arrive and then approached the man, later identified as Washington, and arrested him. Id. at 10. At no point did Washington attempt to evade police. See id. Subsequent search and interrogation of Washington uncovered the physical evidence and the incriminating statements that Washington now seeks to suppress.

After the arrest, Macalin was driven by police to Taco Bell to view Washington and asked for an identification. Id. at 97. Macalin gave a hasty reply identifying Washington and was taken back to his cab. Id. at 99-101. Washington was then driven to Northeast Bank, a distance of approximately one to one-and-a-half miles. Id. at 123. Officers arranged for a "show-up," during which Hudson and Schoolmeesters individually viewed Washington through the bank windows. Id. at 123-26. Hudson and Schoolmeesters were both told that they should not assume that the person was involved in the robbery, even if he arrived in a police car or was handcuffed. Id. at 36-37, 127.

3

Washington arrived in an unmarked police car, handcuffed, and accompanied by a uniformed police officer. See id. at 127, 148. Hudson viewed Washington from a distance of about 40 feet. Id. at 147. Hudson told police officers, "looks like he's got a jacket on now but I would say that's our guy." R&R at 9 (citing Gov. Ex. 3). Schoolmeesters also viewed Washington and said, among other things, "he looks . . . almost identical" and "his face looked the exact same." Id. (citing Gov. Ex. 1). When asked how certain she was, Schoolmeesters stated she was "95%" certain that Washington was the bank robber. Tr. at 53.

Washington was indicted for one count of bank robbery. Indictment [Docket No. 6]. He moved to suppress the evidence obtained subsequent to his arrest, arguing that because his arrest was unconstitutional the evidence subsequently obtained is tainted by the initial constitutional violation. Washington further sought to suppress the identifications made by Macalin, Hudson, and Schoolmeesters. Judge Nelson issued an R&R recommending denial of all motions except the identification by Macalin. Washington objects, and the Government has responded, urging the Court to adopt the R&R.

### III. DISCUSSION

**A. Standard of Review**

A district court must make an independent, de novo review of those portions of an R&R to which a party objects and "may accept, reject, or modify, in whole or part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C); see also D. Minn. LR 72.2(b).

**B. Motion to Suppress Evidence Obtained as a Result of Search and Seizure and Motion to Suppress Identification, Statements, Admissions and Answers**

    **1. Fourth Amendment Requirements**

Washington argues that his arrest was not supported by probable cause, and moves to suppress evidence, including both physical evidence and statements by Washington, obtained as a result of that arrest. The Fourth Amendment ensures that "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures, shall not be violated." Const. amend. IV. As such, police may not make an arrest of a person without a warrant unless supported by probable cause to believe that a criminal offense has been or is being committed. Devenpeck v. Alford, 543 U.S. 146, 152 (2004). "[P]robable cause requires only a probability or substantial chance of criminal activity, rather than an actual showing of criminal activity . . . ." United States v. Mendoza, 421 F.3d 663, 667 (8th Cir. 2005) (citation omitted).

Probable cause determinations are based on the totality of the circumstances known to all law enforcement officers involved in the arrest. Id. Such circumstances may include a description of a suspect, but vague descriptions that many people in an area could match do not provide probable cause for a warrantless arrest. United States v. Shavers, 524 F.2d 1094, 1095-96 (8th Cir. 1975). However, more definite descriptions may provide probable cause. See United States v. Jones, 535 F.3d 886, 890 (8th Cir. 2008) (ruling that police had probable cause for warrantless arrest based on knowledge of the location and time of bank robbery, the direction suspect traveled, and the suspect's updated physical description). In Jones, the suspect's abrupt change in direction after he saw an officer following him was an "additional benefit" that was "another factor supporting probable cause." Id. at 891.

    **2. Probable Cause to Arrest Washington**

Judge Nelson properly determined that the police had probable cause to arrest Washington. At the time of his arrest, the officers had collective knowledge of the following physical descriptors of the robbery suspect: (1) African American male, (2) bald or shaved head, (3) short in stature, (4) stocky build, (5) facial hair, (6) sunglasses, (7) black sweater or jacket, (8) gold ring on his left ring finger, and (9) carrying a light blue satchel. Officers further knew the suspect to be in the area of Northtown Mall. When observed by Szykulski prior to the arrest, Washington fit several of those descriptors. At the time of the arrest, Szykulski observed Washington to be: (1) an African American male, (2) short in stature, (3) stocky in build, (4) wearing a black sweater, and (5) carrying a blue satchel. Furthermore, Washington was at a Taco Bell in the vicinity of Northtown Mall, and less than a mile and a half from the crime scene. These facts give rise to more than mere suspicion; these facts created a substantial likelihood that Washington was the person that committed the bank robbery.

Washington argues that many people in the area of Northtown Mall fit the description provided, and therefore no probable cause for his arrest existed. Washington argues that in a high traffic area with men of many races, being an African American man that is short in statute carrying a blue satchel does not provide probable cause. Washington's argument is unpersuasive. While none of the descriptors individually is remarkable, Washington matching several of the descriptors is remarkable enough to provide probable cause. This is not a case where many men in the area were African American, short in stature, and carrying blue satchels. To the contrary, as noted by Washington in his Objections, this was an area with men of many races and many builds. Because Washington matched several of the descriptors, he became more distinctive and gave officers a basis for probable cause for his arrest.

Washington further argues that probable cause was lacking because he did not attempt to evade police like the suspect in <u>Jones</u>. Probable cause, however, is determined on the particular facts and circumstances of each case. In this case, as discussed above, police had probable caused based on Washington's appearance and location. Further, the court in <u>Jones</u> noted that probable cause was provided by Jones' appearance and location; the attempt to evade police was merely an additional factor further contributing to probable cause. <u>Jones</u>, 535 F.3d at 891.

Therefore, Washington's arrest was supported by probable cause given all the circumstances known to law enforcement at the time of the arrest. As such, the evidence obtained from Washington's subsequent lawful search and interrogation is not tainted by any constitutional violation and will not be suppressed as the fruits of an unconstitutional arrest.

## C. Motion to Suppress Identification

### 1. Standard for Eyewitness Identifications

Washington also moves to suppress the identifications made by Hudson and Schoolmeesters. An identification by a witness is admissible unless it is based on a confrontation that was *both* impermissibly suggestive and unreliable. <u>United States v. Pickar</u>, 616 F.3d 821, 827 (8th Cir. 2010). Factors courts consider in determining reliability are: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of any prior description; (4) the level of certainty demonstrated at the confrontation; and (5) the time between crime and confrontation. <u>Neil v. Biggers</u>, 409 U.S. 188, 199-200 (1972). Further, "necessary incidents of on-the-scene identification, such as the suspect being handcuffed and in police custody, do not render the identification procedure

7

impermissibly suggestive." Pickar, 616 F.3d at 828 (citing United States v. Martinez, 462 F.3d 903, 910 (8th Cir. 2006)).

### 2. Hudson's Identification Was Not Unreliable

Judge Nelson properly determined that Hudson's identification was not unreliable under the Biggers factors. Washington correctly argues the record does not reveal much about the circumstances surrounding Hudson's opportunity to view the bank robber during the robbery. However, Hudson clearly had at least some opportunity to view the bank robber. Therefore, without more information, the Court will give no weight to this factor.

Hudson's degree of attention is evidenced by his actions in going to the parking lot and shouting the license plate number of the bank robber's getaway vehicle. Furthermore, his degree of attention was high enough that he noticed the difference in clothing between the bank robber at the time of the robbery and Washington during the show-up. Thus, Hudson's degree of attention weighs in favor of finding his identification reliable.

It is undisputed that Hudson gave no prior identification, and therefore the Court cannot evaluate how the accuracy of a prior identification should weigh in this case.

The short time period between the robbery and the show-ups also weighs in favor of reliability. In total, only little more than an hour passed between the time of the robbery and the show-up. This short time interval allowed Hudson to make an identification while the events of the morning were fresh in his mind. This factor also weighs in favor of the reliability of the identification.

The degree of certainty likewise weighs in favor of reliability. Upon seeing Washington, Hudson stated "looks like he's got a jacket on now but I would say that's our guy." The

statement does not express a high degree of certainty; however, in light of the fact that Hudson

attributed his uncertainty to the difference in clothing, this factor weighs somewhat in favor of

reliability.

### 3. Schoolmeesters' Identification Was Not Unreliable

Judge Nelson properly determined that Schoolmeesters' identification was not unreliable

under the Biggers factors.  As the teller during the robbery, Schoolmeesters had ample

opportunity to view the bank robber.  Therefore, that factor weighs in favor of finding reliability.

Schoolmeesters' degree of attention is unknown, and therefore will not weigh heavily on

the reliability analysis. Likewise, Schoomeesters gave no prior identification, and therefore the

accuracy of such an identification cannot weigh heavily on this analysis.

Similar to Hudson, the short time period between the robbery and the show-up also

weighs in favor of reliability.  In total, only slightly over an hour passed between the time of the

robbery and the show-up.  This factor weighs in favor of finding the identification reliable.

Finally, Schoolmeester expressed a high degree of certainty, and that factor weighs in

favor of reliability.  Schoolmeesters stated that Washington looked "identical to the bank robber"

and "his face looked the exact same."  Further, she stated she was "95%" certain of her

identification.

### 4. Neither Hudson Nor Schoolmeesters' Identification Was the Result of an Impermissibly Suggestive Confrontation

Even if Hudson or Schoolmeester's identifications were unreliable, Judge Nelson

properly recommended denial of Washington's Motion because neither was due to an

impermissibly suggestive procedure.  Standing alone, the fact that Washington was in custody is

not enough to render the identification procedure impermissibly suggestive.  Furthermore, the

officers mitigated the suggestive nature of Washington being in custody by explicitly telling both witnesses not to consider that fact in making their identification.

Washington argues that Hudson and Schoomeesters' identifications are tainted by their viewing of the bank's surveillance video. Washington argues that the video was an unduly suggestive medium and could have led to their positive identifications. However, the mere fact that the witnesses saw the surveillance video is not unduly suggestive. Viewing a surveillance video or photograph is only suggestive when done as the medium for identification. See United States v. Lawson, 410 F.3d 735, 740 (D.C. Cir. 2005) (noting that surveillance photographs are "an arguably suggestive medium" for identifications). Both Hudson and Schoolmeesters saw the bank robber in person, later saw Washington in person, and then identified him as the robber. Watching surveillance video after the robbery was not part of the confrontation between the witnesses and Washington, and suggested nothing about Washington at the time of the show-up.

### IV.  CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1.  Washington's Objection [Docket No. 46] is **OVERRULED**;

2.  Judge Nelson's R&R [Docket No. 34] is **ADOPTED**;

3.  Washington's Motion to Suppress Evidence Obtained as a Result of Search and Seizure [Docket No. 14] is **DENIED**;

4.  Washington's Motion to Suppress Eyewitness Identifications [Docket No. 15] is **GRANTED IN PART** and **DENIED IN PART.** The identification made by Macalin will be suppressed, but the identifications made by Hudson and Schoolmeesters will not

10

be suppressed; and

5.  Washington's Motion to Suppress Identification, Statements, Admission, and Answers

[Docket No. 16] is **DENIED**.

                                                BY THE COURT:


                                                s/Ann D. Montgomery

                                                ANN D. MONTGOMERY
                                                U.S. DISTRICT JUDGE

Dated: November 24, 2010